DMP:JEA
F.#2017R01305

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – x

UNITED STATES OF AMERICA

   - against -

VLADIMIR KUZNETSOV,

           Defendant.

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR ARREST WARRANT

**Case No. 19-M-690**

(T. 18, U.S.C., § 371 and 2;
 T. 22, U.S.C., § 2778;
 T. 50, U.S.C., § 1705)

– – – – – – – – – – – – – – – x

EASTERN DISTRICT OF NEW YORK, SS:

       JIMMY CEPEDA, being duly sworn, deposes and states that he is a Special

Agent with the United States Department of Homeland Security, Homeland Security

Investigations ("HSI"), duly appointed according to law and acting as such.

       Upon information and belief, on or about and between February 28, 2017 and

thepresent, both dates being approximate and inclusive, within the Eastern District of New

York and elsewhere, the defendant VLADIMIR KUZNETSOV, together with others, did

knowingly, intentionally and willfully export, attempt to export, and conspire to export from

the United States to Russia items on the United States Munitions List, to wit: rifle parts and

accessories, without first having obtained a license from the Department of State, Directorate

of Defense Trade Controls.

(Title 22, United States Code, Section 2778; Title 18, United States Code, Sections 371 and 2)

Further, upon information and belief, on or about and between February 28, 2017 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VLADIMIR KUZNETSOV, together with others, did willfully export, attempt to export, and conspire to export from the United States to Russia items on the United States Commerce Control List, to wit: rifle parts and accessories, without first having obtained a license from the United States Department of Commerce.

(Title 50, United States Code, Section 1705; Title 18, United States Code, Section 2).

The source of your deponent's information and the grounds for his belief are as follows:[1]

I.    AGENT BACKGROUND

1.    I am a Special Agent with HSI.  I have been a Special Agent since 2017.  As an HSI Special Agent, I have investigated numerous matters during the course of which I have conducted physical and electronic surveillance, interviewed witnesses, executed court-authorized search warrants and used other investigative techniques to secure relevant information.  I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file; and information

---

[1]    Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

provided to me by other agents and law enforcement officials; and information otherwise obtained by credible and reliable sources.

2.     Based on my training and experience as a Special Agent with HSI and the facts set forth in this affidavit, there is probable cause to believe that the defendant VLADIMIR KUZNETSOV, together with others, knowingly, intentionally and willfully exported, attempted to export, and conspired to export, from the United States to Russia items on the United States Munitions List ("USML") and United States Commerce Control List ("CCL"), to wit: rifle parts and accessories, without first having obtained a license from (a) the United States Department of State, Directorate of Defense Trade Controls ("DDTC"), in violation of the Arms Export Control Act ("AECA") (22 U.S.C. § 2778) and (b) the United States Department of Commerce ("DOC"), in violation of the International Emergency Economic Powers Act ("IEEPA") (50 U.S.C. § 1705).

II.     APPLICABLE STATUTES AND REGULATIONS

3.     The export of defense articles is regulated by the AECA, Title 22, United States Code, Section 2778.  Section 2778(a) authorizes the President of the United States to control the import and export of defense articles and to establish the USML, which identifies and defines the defense articles subject to these controls.  Section 2778(b) provides that any person engaged in the business of manufacturing or exporting any defense articles shall register with the government.  Section 2778(c) establishes criminal penalties for any violation of Section 2778 or any rule or regulation thereunder.

4.     By executive order, the President delegated the authority to control the export of defense articles to the DDTC. Accordingly, the DDTC promulgated regulations under the AECA, which were known as the International Traffic in Arms Regulations

("ITAR"), Title 22, Code of Federal Regulations, Parts 120 – 130. These regulations

established the USML and required an export license from the DDTC for the export of items

on the USML.

      5.    Under the IEEPA, the President of the United States was granted

authority to deal with unusual and extraordinary threats to the national security, foreign

policy or economy of the United States. See 50 U.S.C. § 1701(a). Pursuant to that

authority, the President may declare a national emergency through Executive Orders that

have the full force and effect of law. Among other things, the IEEPA empowers the

President to issue regulations governing exports from the United States.

      6.    Pursuant to the IEEPA, on August 17, 2001, the President issued

Executive Order 13,222, which declared a national emergency with respect to the unusual

and extraordinary threat to the national security, foreign policy and economy of the United

States in light of the expiration of the Export Administration Act ("EAA"), 50 App. U.S.C.

§§ 2401-2420, which lapsed on August 17, 2001. 66 Fed. Reg. 44,025 (Aug. 22, 2001).

While in effect, the EAA regulated the export of goods, technology and software from the

United States. Pursuant to the provisions of the EAA, the DOC's Bureau of Industry and

Security ("BIS") promulgated the Export Administration Regulations ("EAR"), 15 C.F.R.

§§ 730-774, which contained restrictions on the export of goods outside of the United States,

consistent with the policies and provisions of the EAA. See 15 C.F.R. § 730.2. In Executive

Order 13,222, pursuant to the IEEPA, the President ordered that the EAR's provisions

remain in full force and effect despite the expiration of the EAA. Presidents have issued

annual Executive Notices extending the national emergency declared in Executive Order

13,222. The last such notice was issued in August 2018. See 88 Fed. Reg. 39,871 (Aug. 13, 2018).[2]

7. Under the IEEPA, it is a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any order, license, regulation or prohibition issued pursuant to the statute. See 50 U.S.C. § 1705(a). Willful violations of the EAR constitute criminal offenses under the IEEPA, and carry a 20-year maximum term of imprisonment and up to a $1,000,000 fine. See 50 U.S.C. § 1705(c).

8. Through the EAR, the BIS reviews and controls the export from the United States to foreign countries of certain U.S. items. See 15 C.F.R. §§ 734.2-.3. In particular, the BIS has placed restrictions on the export and re-export of items that it has determined could make a significant contribution to the military potential or nuclear proliferation of other nations or that could be detrimental to the foreign policy or national security of the United States. Under the EAR, such restrictions depend on several factors, including the technical characteristics of the item, the destination country, the end user and the end use.

9. The most sensitive items subject to the EAR controls are identified on the CCL, set forth in Title 15, Code of Federal Regulations, part 774, Supplement Number 1. Items listed on the CCL are categorized by Export Control Classification Number ("ECCN"),

---

[2] On August 13, 2018, the President signed into law the National Defense Authorization Act of 2019, which includes provisions on export controls, titled the Export Control Reform Act of 2018 ("ECRA"), Pub. L. No. 115-232, tit. 17, subtitle B, 132 Stat. 2208 (2018). In part, ECRA provides permanent statutory authority for the EAR. For conduct that predates August 13, 2018, the IEEPA is the controlling statute. For conduct occurring after August 13, 2018, ECRA is the controlling statute. To date, the investigation has determined that KUZNETSOV's exports of items subject to the EAR predate August 2018.

each of which had export control requirements depending on destination, end use and end user.

III. THE INVESTIGATION

    A. Background

        10. HSI, in conjunction with the DOC, the United States Postal Inspection Service ("USPIS"), the Department of Defense, Defense Criminal Investigative Service ("DCIS") and the Department of Homeland Security, Customs and Border Protection ("CBP"), is conducting an investigation into the activities of the defendant VLADIMIR KUZNETSOV (hereinafter "KUZNETSOV") and others known and unknown for illegally exporting, attempting to export, and conspiring to export items to Russia without the required licenses from the DDTC and the DOC, in violation of the AECA and the IEEPA.

        11. As described more fully below, the investigation has revealed that between at least February 2017 and the present, KUZNETSOV and other individuals have engaged in a scheme where they: (a) purchased export-controlled rifle parts and accessories from U.S.-based manufacturers or distributors; (b) provided false information in connection with the purchase of the export-controlled products, in order to avoid a request for an appropriate export license; (c) directed the export-controlled products shipped to KUZNETSOV's residence in the United States; (d) repackaged the export-controlled products and provided them to the United States Postal Service ("USPS") for export to Russia; and (e) made false statements to the USPS about the contents of the packages, so that the packages would be exported to Russia without the required licenses from the DDTC or the DOC.

B.     The Defendant

12.     KUZNETSOV is a lawful permanent resident ("LPR") of the United States, as well as a citizen and national of Russia.  According to U.S. government records, KUZNETSOV applied for a non-immigrant visa in 2011 and was admitted on a B1/B2 visa. In 2015, KUZNETSOV obtained an immigrant visa based on his marriage to a naturalized United States citizen, who was also formerly from Russia.

C.     The Purchase, Export, and Attempted Export of Controlled Products

13.     In approximately May 2017, federal law enforcement agents who were investigating the sale of export-controlled rifle parts and accessories became aware that KUZNETSOV was attempting to sell what appeared to be export-controlled rife parts and accessories to individuals who were not located in the United States.

1.     The May 22, 2017 Seizure

14.     On or about May 22, 2017, CBP detained and seized a package containing, among other things, an Accuracy International AICS AX MK II rifle chassis, valued at $1,662, a Timney Sportsman trigger assembly for a Mauser 98 rifle, a Dakota bolt shroud for a Mauser 98 rifle, Horanday .375 caliber gas checks, magazines and other rifle parts and accessories (the "May 22nd Package").  The name of the sender listed on the package was "Vlad Kuznetsov," with a return address of 2780 W 5th Street, 17E, Brooklyn, New York 11224 (the "Kuznetsov Premises").  The recipient was listed as "Vadim Novikov," with an address in Russia.  The description of the contents of the package was "Reloading tools, Hand tools, Sporting goods, and cleaning tools" and made no mention of rifle parts.

15.    The DDTC has confirmed that the rifle chassis and other items seized from the May 22nd Package are ITAR-controlled and were on the USML and, thus, could not be exported to Russia without a license from the DDTC.  A review of the Automated Export System revealed that KUZNETSOV did not have a license to export such items.

16.    During the investigation, law enforcement agents obtained records relating to purchases of rifle parts and accessories made by KUZNETSOV from certain United States-based distributors.  A review of these records indicated that, on or about April 28, 2017, KUZNETSOV purchased online the rifle chassis seized from the May 22nd Package from one specific United States-based distributor ("Company A").  The records further revealed that the rifle chassis was shipped to KUZNETSOV's address of record for Company A, the Kuznetsov Premises.  A review of records from another United States-based distributor ("Company B") indicated that between approximately March 2016 and April 2017, KUZNETSOV purchased online from Company B the Dakota bolt shroud for a Mauser 98 rifle, Horanday .375 caliber gas checks, the Timney Sportsman trigger assembly, and other items included in the May 22nd Package, which were shipped to KUZNETSOV's address of record on file for Company B, the Kuznetsov Premises.

17.    The invoice sent by Company A to KUZNETSOV included the following warning: "Transfer of these products to any individual or entity or location (whether in your city, state, or outside the United States) may be subject to restrictions and/or licensing requirements."

18.    The invoices sent by Company B to KUZNETSOV included the following warning: "These commodities, technology, or software should only be exported from the United States in accordance with the Bureau of Industry and Security Regulations

(BIS), Diversion contrary to U.S. law is prohibited.  Please contact BIS for regulatory

information prior to shipment outside of U.S.  Further, under Federal Law (the Arms Export

Control Act – AECA and International Traffic in Arms Regulations – ITAR), it is unlawful

and illegal to export defense items without a U.S. State Department-issued license.  See e.g.

ITAR Section 121.1 Categories I to III."

2.    The July 2, 2017 Seizure

19.    On or about July 2, 2017, CBP detained and seized another package

containing an "H-S Precision" aluminum rifle stock for a Remington 700 series bolt action

rifle, valued at $435, which was discovered hidden underneath a "Bosch" benchtop router

table (the "July 2nd Package").  The router table appeared to be in new condition, within the

manufacturer's carton, with all documentation and packaging materials intact.  The rifle

stock was secreted inside the packaging and beneath the router table.

20.    The name of the sender listed on the package was "Vlad Kuznetsov,"

with a return address of the Kuznetsov Premises.  The recipient was listed as "Vadim

Novikov," with an address in Russia.  The sole item listed on the USPS shipping label and

customs form regarding the contents of the package was "Benchtop Router Table 1, value:

$240," and made no mention of the rifle stock.  The customs form contains a certification at

the bottom, which reads: "I certify the particulars given in this customs declaration are

correct.  The item does not contain any undeclared dangerous articles, or articles prohibited

by legislation or by postal or customs regulations.  I have met all applicable export filing

requirements under federal law and regulations."  A signature appears next to this

certification.

21.     The DDTC has confirmed that the rifle stock seized from the July 2nd Package is ITAR-controlled and was on the USML and could not be exported to Russia without a license from the DDTC.  Further, a review of the Automated Export System revealed that KUZNETSOV did not have a license to export such item.

22.     Law enforcement also reviewed records of Company A that indicated that, on or about March 15, 2017, KUZNETSOV purchased online from Company A the rifle stock seized from the July 2nd Package.  The records further revealed that the rifle stock was shipped to KUZNETSOV's address of record for Company A, the Kuznetsov Premises.  The invoice sent by Company A to KUZNETSOV also included the warning that a "[t]ransfer of these products to any individual or entity or location . . . may be subject to restrictions and/or licensing requirements."

3.     The April 18, 2018 Seizure

23.     On or about April 18, 2018, CBP detained and seized another package containing ITAR-controlled items.  The items seized included, among other things, a "Kinetic Research Group" Savage 180-Alpha rifle chassis, valued at $768, and 5-round magazines (the "April 18th Package").  The rifle chassis and magazine were discovered along with a pair of New Balance sneakers, blue jeans, a heating pad and a digital blood pressure monitor.

24.     The name of the sender listed on the package was "Vladimir Kuznetsov," with a return address of the Kuznetsov Premises.  The recipient was listed as "Kirill Semivkajnrv," with an address in Russia.  The items listed on the USPS customs form regarding the contents of the package was a blood pressure monitor, heating pad, "clothes (jeans, sneakers)" and "Sporting goods" listed with a total value of $400 and no mention of

the rifle chassis or magaizines. The customs form likewise contained a certification, which stated that: "The item does not contain any undeclared dangerous articles, or articles prohibited by legislation or by postal or customs regulations. I have met all applicable export filing requirements under federal law and regulations." A signature appears next to this certification.

25. The DDTC has confirmed that the rifle chassis and magazines seized from the April 18th Package are ITAR-controlled and were on the USML and could not be exported to Russia without a license from the DDTC. Further, a review of the Automated Export System revealed that KUZNETSOV did not have a license to export such items. Following the seizure of the April 18th Package, CBP sent a notice of seizure to KUZNETSOV at the Kuznetsov Premises regarding the rifle chassis and magazines found in the April 18th Package. The notice provided, in relevant part, that the rifle chassis and magazines were seized and subject to forfeiture because of "a failure to obtain a Department of State export license" and that "the export is in violation of [federal regulations] which mandates that exports of any shipment containing commodities regulated by [the ITAR] be filed electronically in the Automated Export System." A review of CBP records shows that KUZNETSOV never filed a response, including an election of proceedings, to CBP's notice of forfeiture regarding the items seized from the April 18th Package.

26. Law enforcement reviewed records showing that, on or about March 6, 2018, KUZNETSOV purchased online from a United States-based distributor ("Company C") the rifle chassis seized from the April 18th Package. The records further revealed that the rifle chassis was shipped to KUZNETSOV's address of record for Company C, which was the Kuznetsov Premises. A review of records from another United States-based

distributor ("Company D") indicated that, on or about February 9, 2018, KUZNETSOV purchased online the 5 round magazines included in the April 18th Package, which were shipped to KUZNETSOV's address of record for Company D, the Kuznetsov Premises.

27.     Company C's website requires that a purchaser read and accept their Terms and Conditions prior to placing an order.  Under the "Shipping Policies" section of Company C's website, it states that Company C does not ship internationally, unless a military exception exists, "…due to ITAR restrictions which severely limit the export of many things related to firearms."

28.     An official at Company D stated that there are export/International Traffic in Arms Regulations (ITAR) warnings at several sections of the website and during the ordering process that warn the purchaser that an export license may be required for certain items purchased.

4.     The May 10 2018 Seizure

29.     On or about May 10, 2018, CBP detained and seized another package containing export-controlled items.  The items, "Wilcox" L4 helmet mounts for night vision goggles, were discovered along with personal items, including an electric hair clipper, a laser rangefinder, a tool kit and audio earphones (the "May 10th Package").

30.     The name of the sender listed on the package was "Marina Maller," with a return address of the Kuznetzov Premises.  Upon information and belief, KUZNETSOV is married to Marina Maller.  The recipient was listed as "Dmitry Kuznetsov," with an address in Russia.  A review of KUZNETSOV's immigration records shows that KUZNETSOV has a child named "Dmitry Kuznetsov."  The items listed on the USPS customs form regarding the contents of the May 10th Package was a "beard trimmer,"

"rangefinder" earmuffs and two (2) "scope mount" listed with a value of $250.  The customs

form likewise contained a certification, which stated that: "The item does not contain any

undeclared dangerous articles, or articles prohibited by legislation or by postal or customs

regulations.  I have met all applicable export filing requirements under federal law and

regulations."  A signature appears next to this certification, which matches the signatures

provided for the previous packages seized by CBP.

31.     The DOC has confirmed that the L4 helmet mounts in the May 10th

Package are included on the CCL and classified under Export Control Classification Number

7A611.x, that they are controlled for "national security" and "regional stability" reasons, and

that a license is required in order to be exported to Russia.  Further, a review of the

Automated Export System revealed that neither Maller nor KUZNETSOV had a license to

export such items.

32.     On June 15, 2018, the Honorable Steven L. Tiscione, United States

Magistrate Judge for the Eastern District of New York, signed a search warrant for the email

address "voldemar1961[@]gmail.com" (the "Subject Email").  See 18-MC-1649 (filed under

seal).

33.     Law enforcement thereafter reviewed the Subject Email and discovered

that on both March 23rd, 2018 and April 17th, 2018, KUZNETSOV received order

confirmations and invoices from another United States-based distributor ("Company E"), at

the Subject Email, including the Wilcox L4 helmet mounts contained in the May 10th

Package.  The invoice from Company E stated the following:

> Some of all of the products invoiced to the purchaser by
> [Company E] may be regulated by the U.S. Department of
> Commerce and/or the Department of State.  Products regulated

by the U.S. Department of Commerce and/or the Department of State must be exported from the United States in accordance with Export Administration Regulations and/or ITAR Regulations.  Diversion contrary to the Export Administration Regulations, ITAR regulations and/or contrary to U.S. law is prohibited.  In accordance with U.S. law, resale, re-export or transfer of these products to certain designated countries is prohibited without prior written consent of the U.S. Department of Commerce and/or the Department of State.

     5.    Other Relevant Information

34.    A review of communications in the Subject Email also revealed correspondence between the Subject Email and an individual identified as "Vadim Novikov," the intended recipient of the May 22nd Package and the July 2nd Package.  Law enforcement officers discovered, among other things, communications between the Subject Email and Novikov that revealed various orders, shipping names, shipping addresses, payment arrangements regarding export-controlled items, including spreadsheet attachments, which listed many of the items KUZNETSOV attempted to export to Russia.

35.    In addition, a review of bank accounts belonging to KUZNETSOV and his wife, Marina Maller, revealed several account deposits and wire transfers from Novikov and other co-conspirators.

36.    During the course of this investigation, both the DDTC and the DOC have confirmed that no export licenses have been obtained in the name of KUZNETSOV or any other known co-conspirator.  Thus, to the extent that any of the above-described products were exported (or attempts were made to export them) out of the United States, there was not a valid license associated with those exports (or attempted exports).

IV.   CONCLUSION

37.     Based on my training and experience, as well as the facts set forth in this affidavit, there is probable cause to believe that the defendant VLADIMIR KUZNETSOV, together with others, did (a) knowingly, intentionally and willfully export, attempt to export, and conspire to export from the United States to Russia items on the USML, to wit: rifle parts and accessories, without first having obtained a license from the DDTC, in violation of Title 22, Unites States Code, Section 2778 and Title 18, United States Code, Sections 371 and 2; and (b) willfully export, attempt to export, and conspire to export from the United States to Russia items on the CCL, to wit: rifle parts and accessories, without first having obtained a license from the United States Department of Commerce, in violation of Title 50, United States Code, Section 1705, and Title 18, United States Code, Section 2.

38.     It is respectfully requested that this Court issue and order sealing, until further order of the Court, all papers submitted in support of this application, including the application, the arrest warrant, and the complaint.  I believe that sealing these documents is necessary because the defendant is currently at liberty, and the government plans to effectuate an arrest.  Thus, the government seeks to seal the complaint and arrest warrant to ensure that the defendant does not learn that a complaint has been filed and an arrest warrant has been issued, and to prevent him from fleeing justice and avoiding arrest and prosecution. Further, as noted above, additional co-conspirators have not yet been arrested and are not aware of the investigation.  As such, the government seeks to seal the complaint and arrest warrant so that KUZNETSOV's co-conspirators do not destroy evidence in advance of KUZNETSOV's arrest.

WHEREFORE, your deponent respectfully requests that an arrest

warrant be issued, and that the defendant VLADIMIR KUZNETSOV be dealt with

according to law.

_____
JIMMY CEPEDA
Special Agent
Homeland Security Investigations

Sworn to me before this
1st day of August, 2019

/s/ SLT
_____
THE HONORABLE STEVEN L. TISCIONE
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK